UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:17-cv-00380-EBA

RONALD GRAY,                                                                                                        PLAINTIFF,

V.                                  **MEMORANDUM OPINION**
                                       **AND ORDER**

NANCY A. BERRYHILL, *in her*
*official capacity as the Acting*
*Commissioner of the Social*
*Security Administration*,                                                       DEFENDANT.

Plaintiff, Ronald Gray, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to challenge Defendant Commissioner's final decision denying Plaintiff's application for Social Security Disability Insurance Benefits. [R. 1]. This matter has been referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. [R. 12; R. 13; R. 14]. The specific matters currently before this Court include Plaintiff's Motion for Judgment on the Pleadings [R. 15] and Defendant's responsive Motion for Summary Judgment [R. 18]. Both matters are now ripe for decision, and, for the reasons discussed below, Plaintiff's Motion for Judgment on the Pleadings [R. 15] will be granted, and Defendant's Motion for Summary Judgment [R. 18] will be denied. Accordingly, the Court will reverse the Defendant Commissioner's decision to deny Plaintiff's disability claim and remand this matter for further administrative proceedings in accordance with this order.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 9, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. [R. 10-1, at 81]. On November 19, 2014, Plaintiff's claim was denied for the

first time. *Id*. On April 8, 2015, Plaintiff's claim was denied for the second time. *Id.* On August 1, 2016, an additional hearing was held. *Id.* On September 23, 2016, Plaintiff's claim was denied for the third time. *Id.* at 81-91. Plaintiff then filed an administrative appeal; however, on July 19, 2017, the Appeals Council denied Plaintiff's request for review. *Id.* at 4. Having exhausted his administrative remedies, on September 20, 2017, Plaintiff sought review through an action in this Court. [R. 1].

On January 22, 2018, pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff filed the present Motion for Judgment on the Pleadings [R. 15], with an accompanying Memorandum in Support [R. 16], arguing the following:

> 1. The [Administrative Law Judge ("ALJ")] erred by failing to include mental limitations in the RFC, despite acknowledging that Plaintiff suffers from depression and anxiety. The ALJ further erred by improperly discounting the opinion of consultative examiner, Dr. [Robert W.] Genthner, without proper evaluation.
> 2. The Step 4 determination is not supported by substantial evidence because the ALJ relied on Vocational Expert testimony elicited in response to an incomplete hypothetical question.

[R. 15, at 1; R. 16, at 1].

Responding to Plaintiff's Motion for Judgment on the Pleadings [R. 15], on February 21, 2018, Defendant filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) [R. 18] arguing, in summary, "The ALJ properly evaluated the total record in determining the extent of Plaintiff's severe impairments, in her RFC finding, and in finding that Plaintiff retained the capacity to perform past relevant work, with her decision being supported by substantial evidence." [R. 18, at 8].

## **JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT STANDARDS**

This action is now before this Court on the Parties' cross motions for summary judgment. [R. 15; R. 18]. While Plaintiff styled his Motion [R. 15] as one for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c), if such a motion relies on matters outside the pleadings, as the Plaintiff's Motion [R. 15] does, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's Decision [R. 10-1, at 81-91] "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). "In determining whether the Secretary's factual findings are supported by substantial evidence, [the Court] must examine the evidence in the record 'taken as a whole . . . .'" *Wyatt v. Secretary of Health and Human Services,* 974 F.2d

3

680, 683 (6th Cir. 1992) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)). Additionally, the Court "'must take into account whatever in the record fairly detracts from its weight.'" *Wyatt,* 974 F.3d at 683 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir. 1978). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). "If the Secretary's findings are supported by substantial evidence, then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Secretary of Health & Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

## **DISCUSSION**

Under the Social Security Act, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In summary, the five-step sequential evaluation process is as follows:

> The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. § 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." § 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. § 416.920(d). If the claimant does not satisfy one of the listings, the [fourth step] is to determine whether the claimant's impairment prevents him from performing his past relevant work. § 416.920(e). If it does not, the claimant is found not disabled. [At the fifth step,] [i]f the impairment prevents a return to former work, the claimant's residual functional capacity must be determined, *id.,* and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. §

4

416.920(f); *see also* Subpart P, Appendix 2, Tables 1–3.

*Williamson v. Secretary of Health and Human Services,* 796 F.2d 146, 149 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

The claimant "bear[s] the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Id.*

Since the Parties' cross motions for summary judgment [R. 15; R. 18] concern the same facts, the Court will consider the Parties' Motions [R. 15; R. 18] together. The issues before the Court are as follows: (1) whether the ALJ justifiably determined Plaintiff was not subject to a severe mental impairment; (2) whether the ALJ's Decision [R. 10-1, at 81-91] was supported by substantial evidence; and (3) whether the ALJ's reliance on vocational expert testimony was proper. [R. 16, at 7-15; R. 18, at 8-15]. Since the issues of whether the ALJ justifiably determined Plaintiff was not subject to a severe mental impairment and whether the ALJ's Decision [R. 10-1, at 81-91] was supported by substantial evidence are so closely related, the Court will consider them together. The issue of whether the ALJ's reliance on vocational expert testimony was proper will be considered separately.

### I. WHETHER THE ALJ JUSTIFIABLY DETERMINED PLAINTIFF WAS NOT SUBJECT TO A SEVERE MENTAL IMPAIRMENT AND WHETHER THE ALJ'S DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues his mental impairments are severe and should have been considered as such in the ALJ's step two and RFC Finding [R. 10-1, at 86]. [R. 16, at 10-14]. However, at step two, the ALJ determined "[Plaintiff] has the following severe impairments: degenerative disc

disease, obesity and essential hypertension." [R. 10-1, at 84 (citing 20 C.F.R. § 404.1520(c))]. "Once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps." *Pompa v. Commissioner of Social Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) (citing 20 C.F.R. § 404.1545(e)). Since the ALJ found Plaintiff had multiple severe impairments at step two of the sequential evaluation process, "the question of whether ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa,* 73 F. App'x at 803. Therefore, as Defendant correctly asserts, "[t]he finding of non-severity is not legally relevant because the ALJ went on to determine Plaintiff's RFC between steps three and four, and, at that point, was required to consider his severe impairments as well as impairments determined not severe." [R. 18, at 9-10 (citing 20 C.F.R. § 404.1545(a)(2))].

Pursuant to 20 C.F.R. § 404.1545(a)(2), "If [a claimant has] more than one impairment. [The ALJ] will consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when [the ALJ] assess[es] [the claimant's] residual functional capacity." Residual functional capacity ("RFC") is a claimant's maximum work capacity considering all the relevant information and despite the claimant's physical and/or mental limitations. 20 C.F.R. § 416.945(a)(1); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). A claimant's RFC is to be determined by an ALJ considering all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). Medical evidence is explicitly to be considered, 20 C.F.R. § 416.927, as is the supportability, 20 C.F.R. § 416.927(c)(3), and the consistency, 20 C.F.R. § 416.927(c)(4), of that evidence with the other evidence in the record. Thus, "[a] statement by a medical source that you are "disabled" or "unable to work" does

not mean that we *will* determine that you are disabled." 20 C.F.R. § 416.927(d)(1) (emphasis added). Final credibility determinations are generally left to the discretion of the ALJ. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Plaintiff argues that despite the ALJ acknowledging Plaintiff's limitations related to depression and anxiety in the ALJ's Decision [R. 10-1, at 81-91], "the ALJ did not account for them in formulating the RFC, because the RFC includes no mental limitations whatsoever." [R. 16, at 9].

The ALJ's RFC Finding [R. 10-1, at 86] is as follows:

After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functioning capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). The [Plaintiff] is able to lift/carry twenty pounds occasionally and ten pounds frequently and he is able to stand/walk six hours and sit at least six hours in an eight-hour workday. He is able to frequently climb ramps and stairs, occasionally stoop, kneel, crouch and crawl; however, he should not climb ladders ropes or scaffolds, He should avoid hazards, such as dangerous machinery and unprotected heights.

[R. 10-1, at 86].

The transcript of the ALJ's Decision [R. 10-1, at 81-91] shows the ALJ, indeed, considered Plaintiff's mental impairments in making the ALJ's RFC Finding [R. 10-1, at 86]. Specifically, in making the RFC Finding [R. 10-1, at 86], regarding mental impairments, the ALJ discussed the following:

• "[Plaintiff] stated he also has depression and does not like to be in public" [R. 10-1, at 87];

• Plaintiff's October 9, 2014 mental status examination with consultative examiner Dr. Genthner [R. 10-1, at 87];

• "[Plaintiff] reported current symptoms of depression most days and diminished interest in people and things" [R. 10-1, at 88];

- "[Plaintiff] reported fatigue, lethargy and sleep disturbance" [R. 10-1, at 88];
- Dr. Genthner's diagnosis of Plaintiff [R. 10-1, at 88] *see also* [R. 10-1, at 304-14];

- State agency consultative examiner James C. Owen, M.D.'s October 13, 2014 examination of Plaintiff in which Plaintiff reported, and was diagnosed with, depression [R. 10-1, at 88-89]; *see also* [R. 10-1, at 315-20];

- Plaintiff's May 2, 2014 through April 9, 2015 medical records from Kentucky River Foothills Development Council, Inc. ("Kentucky River Foothills") indicating Plaintiff reported depression and was prescribed Citalopram for depression, which Plaintiff reported was helping [R. 10-1, at 89]; *see also* [R. 10-1, at 321-47];

- Plaintiff's September 21, 2015 medical records from Kentucky River Foothills indicating Plaintiff reported he had been out of depression medication, Citalopram, since May 2015 [R. 10-1, at 89]; *see also* [R. 10-1, at 351];

- "[Plaintiff] stated the increase in Citalopram helped his depression but he was switched to Wellbutrin, which would also help with his smoking cessation efforts" [R. 10-1, at 89]; and \

- "In May 2016, [Plaintiff] reported Wellbutrin was working well and he would like to stay on that dose as his depression was down from eight to five" [R. 10-1, at 89]; *see also* [R. 10-1, at 385].

As discussed in the ALJ's explanation for why the ALJ made the RFC Finding [R. 10-1, at 86], Plaintiff's October 9, 2014 mental status examination with Dr. Genthner "suggested adequate cognitive functioning," and during the mental status examination, the following occurred: "[Plaintiff] stated that [he] . . . suffers from depression;" Dr. Genthner and Plaintiff discussed what medications Plaintiff was taking at the time, including Citalopram; and "[Plaintiff] noted he had been diagnosed with depression at the Red River Health Care Center but had no history of mental health treatment and had never been hospitalized for a mental health reason." [R. 10-1, at 87]. "Dr. Genthner's diagnosis was somatic symptom disorder and persistent depressive disorder." *Id.* at 88. Furthermore, Dr. Genthner found the following, which was included in the ALJ's explanation for why the ALJ made the RFC Finding [R. 10-1, at 86]:

8

> "[T]he claimant's capacity to retain and follow simple instructions was adequate as was his ability to understand, retain and follow detailed or complex instructions. His ability to carry out and persist at a simple repetitive task without special supervision was mildly limited and his attention/concentration skills described by his test results and presentation were mildly limited. His capacity to relate to employers and coworkers was mild to moderately limited based on history and presentation. Capacity to work with others without being distracted or overwhelmed was mild to moderately limited. His capacity to deal with the public was moderately limited and simple changes in routine may at times be overwhelming or debilitating to the claimant. Based on history and presentation he should not have difficulty with authority. Capacity to make simple work-related decisions appeared adequate. Ability to be aware of normal hazards and take appropriate precautions appeared adequate. He had good premorbid work history. His capacity to tolerate stress and pressure associated with day-to-day work activity was moderately limited. The claimant would benefit somewhat from mental health follow-up.

[R. 10-1, at 88]; *see also* [R. 10-1, at 304-14]. In making the ALJ's RFC Finding [R. 10-1, at 86], the ALJ considered Dr. Genthner's opinion regarding Plaintiff's limitations. [R. 10-1, at 88]; *see also* [R. 10-1, at 304-14].

However, instead of adopting Dr. Genthner's opinion:

> The [ALJ] accord[ed] great weight to the opinions of the State agency medical consultants[, Dr. Ilze Sillers and Dr. Jennifer Meyer,] because the opinions [were] supported by the overall evidence. Slight weight [was] accorded [to] the opinion of the consultative psychologist, Dr. Robert Genther because it [was] somewhat internally inconsistent and it [was] not supported by other evidence. Partial weight [was] accorded [to] the opinion of CE physician, Dr. James Owen because of vagueness.

[R. 10-1, at 90].

Plaintiff argues the ALJ giving Dr. Genthner's opinion "slight weight" and Dr. Meyer's opinion "great weight" is "legal error and violates the regulations." [R. 16, at 11]. Generally, more weight is given to the medical opinion of an examining source, such as Dr. Genthner, than to the medical opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1) However, "the nature of the examining relationship is but one factor that bears on the weight to be given to a medical source opinion." *Carter v. Colvin,* 27 F. Supp. 3d 1142, 1151 (D. Col. 2014) (citing 20 C.F.R. §

404.1527(c)(1)). "[A]n administrative law judge is not bound by an examining physician's opinion and must evaluate it the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion." *Ziegler v. Astrue,* 576 F. Supp. 2d 982, 996 (W.D. Wisc. 2008) (citing *Haynes v. Barnhart,* 416 F.3d 621, 630 (7th Cir. 2005)). Furthermore, "[a]n administrative law judge can reject an examining physician's opinion if his reasons for doing so are supported by substantial evidence in the record." *Ziegler,* 576 F. Supp. 2d at 996 (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003)). "When the record contains well supported contradictory evidence, even a treating physician's opinion 'is just one more piece of evidence for the administrative law judge to weigh.'" *Ziegler,* 576 F. Supp. 2d at 996 (quoting *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006)).

"[S]tate agency medical consultants[, such as Drs. Sillers and Meyer,] are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Commissioner of Social Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "Thus, under certain circumstances, an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating or examining source." *Miller v. Commissioner of Social Sec.,* 811 F.3d 825, 834 (6th Cir. 2016) (citing Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3; *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 409 (6th Cir. 2009)). "Such circumstances include where the non-examining source's opinion 'is based on a review of a complete case record.'" *Miller,* 811 F.3d at 834 (citing Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3). "In short, '[a]n ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.'" *Lester v.*

*Chater,* 61 F.3d 821, 831 (9th Cir. 1995) (citing *Roberts v. Shalala,* 66 F.3d 179, 184 (9th Cir. 1995)).

In the present case, as Plaintiff correctly asserts, "[Dr. Meyer] did not even have access to a complete file upon which to base her assessment, as her opinion was rendered . . . before the administrative record was complete." [R. 16, at 12]. Plaintiff incorrectly cites the date of Dr. Meyer's assessment as occurring in April 2015, but the record shows Dr. Meyer's assessment was, in fact, dated February 16, 2015. [R.10-1, at 145]. Plaintiff admits, "[T]he treatment records through April 2015 reflect only that Plaintiff vaguely reported citalopram was 'helping,' (citations omitted) but there is no discussion of the degree of relief Plaintiff achieved from his depressive symptoms." [R. 16, at 12].

However, after April 2015 the following occurred and was included in the administrative record [R. 10-1]: on February 10, 2016, Plaintiff's Citalopram dosage was increased, and Plaintiff was referred for therapy [R. 16, at 12 (citing [R. 10-1, at 367])]; on March 8, 2016, Plaintiff reported a "depressed mood and fatigue" and that the February 10, 2016 increase in Citalopram helped bring his "depression down from 8/10 to 6/10" [R. 16, at 12 (citing [R. 10-1, at 369, 372])]; also on March 8, 2016, Plaintiff presented for psychotherapy where he reported feeling "extremely depressed and most days he just sits and watches tv [sic] and does nothing" [R. 10-1, at 376]; *see also* [R. 16, at 12 (citing [R. 10-1, at 372-76])], and "on examination, Rob Stone, M.A. LPCC, noted Plaintiff had body odor, and he reported he rarely bathes" [R. 16, at 12 (citing [R. 10-1, at 376-377])]; on April 21, 2016, Plaintiff was seen by Brandy Akers, APRN, for depression, and Plaintiff "reported his symptoms are poorly controlled, he had difficulty functioning, and he experiences symptoms of depressed mood, difficulty concentrating, difficulty falling asleep, difficulty staying asleep, diminished interest or pleasure, excessive worry, fatigue, loss of appetite,

and restlessness" [R. 16, at 12-13 (citing [R. 10-1, at 378, 381])]; during the April 21, 2016 appointment with Nurse Akers, Plaintiff's depression/anxiety was a 7/10 in severity, and Nurse Akers discontinued Plaintiff's Citalopram prescription [R. 10-1, at 378, 380]; *see also* [R. 16, at 13]; on May 23, 2016, Plaintiff reported depressed mood, and Nurse Akers noted, "Wellbutrin works better, I would like to stay on this dose, depression down from 8/10 to 5/10" [R. 10-1, at 385]; *see also* [R. 16, at 13 (citing [R. 10-1, at 385, 388])]; and on July 8, 2016, Plaintiff reported his depression was a 7/10 in severity [R. 16, at 13 (citing [R. 10-1, at 393])].

Since Dr. Meyer's opinion, as well as Dr. Sillers's opinion, failed to consider much of the evidence regarding Plaintiff's mental impairments found in the complete record, "we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley,* 581 F.3d at 409 (citing *Fisk v. Astrue,* 253 F. App'x. 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3))). Accordingly, "the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Commissioner of Social Sec.,* 636 F. App'x 625, 632 (6th Cir. 2016) (citing *Blakley,* 581 F.3d at 409).

In *Kepke*, in finding that an ALJ's decision indicated that the ALJ subjected the opinions of two non-examining state agency doctors to some scrutiny, the Court stated, "the ALJ disagreed with [one of the non-examining state agency doctor's] assessment[s] of Kepke's limitations in her activities of daily living and social functioning, and applied even greater restrictions in this area than [the non-examining state agency doctor] opined were appropriate." *Kepke,* 636 F. App'x at 632. Regarding the other doctor's opinion, the Court in *Kepke* found, "[T]he ALJ's scrutiny is not as explicit." *Id.* However, the other doctor "stated in his opinion that he was adopting the prior

RFC because there had not been any new evidence since the prior ALJ decision, while the ALJ stated that 'the evidence of record shows that there has been a change in the claimant's condition since the prior decision . . . .'" *Id.* (citations omitted). Finding the other doctor's opinion was also subject to some scrutiny, the Court in *Kepke* stated:

> The ALJ's adoption of [the other doctor's] opinion, taken together with the ALJ's subsequent statement that there had, in fact, been a "change in [Kepke]'s condition" indicates that the ALJ was aware that [the other doctor] did not have the benefit of reviewing all of the records, and took that into consideration.

*Id.*

Here, the ALJ only mentions Dr. Meyer's opinion by stating, "The [ALJ] accords great weight to the opinions of the State agency medical consultants because the opinions are supported by the overall evidence." [R. 10-1, at 90]. Since the ALJ gave no indication that he considered that Dr. Meyer, and, in turn, Dr. Sillers, did not review a complete case record, it was improper for the ALJ to give greater weight to Drs. Meyer and Sillers's opinions. *Blakley,* 581 F.3d at 409; *Miller,* 811 F.3d at 834; 20 C.F.R. § 404.1527(c).

In addition to failing to give some indication that he considered that Drs. Meyer and Sillers did not review the entire record, the ALJ failed to give "specific, legitimate reasons" that are "supported by substantial record evidence" for why the ALJ gave Drs. Meyer and Sillers's opinions more weight than Dr. Genthner's opinion. *Lester,* 61 F.3d at 831 (citing *Roberts,* 66 F.3d at 184). Instead, the ALJ stated that Drs. Meyer and Sillers's, the state agency medical consultants, "opinions [were] supported by the overall evidence," and Dr. Genthner's opinion was "somewhat internally inconsistent and it is not supported by other evidence." [R. 10-1, at 90]. Regarding the inconsistencies in Dr. Genthner's opinion, the ALJ stated the following:

> The [ALJ] finds the evidence generally does not support the alleged loss of functioning. [Plaintiff] told the CE Pyschologist[, Dr. Genthner,] he stopped working as a stocker at Walmart because of his back and to assist his mother in caring for his father, who was dying of cancer. His father passed away in September

13

> 2014; however, [Plaintiff] did not return to work (exhibit 1F and Testimony). The record includes absolutely no evidence of medical treatment during 2013 (Exhibits 1F-4F). He does have depression; however, he has sought minimal treatment and symptoms are described as fairly controlled (Exhibit 4F). He is routinely encouraged to diet and exercise for weight loss and diabetes mellitus control (Exhibit 3F, 4F).

*Id.*

As previously mentioned, substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In the present case, while the ALJ's aforementioned reasons for finding Dr. Genthner's opinion was inconsistent are specific, legitimate, and supported by substantial record evidence, the ALJ failed to provide any "specific, legitimate reasons that are supported by substantial record evidence" for why he favored Drs. Meyer and Sillers's opinions over Dr. Genthner's opinion, as required. *Lester,* 61 F.3d at 831 (citing *Roberts,* 66 F.3d at 184).

In the present Commissioner's Motion for Summary Judgment [R. 18], the Commissioner asserts that Drs. Meyer and Sillers addressed Dr. Genthner's opinion in their respective opinions, "opined that the intensity of Plaintiff's reported restrictions were not fully supported by treatment records and clinical observations," and "opined that Plaintiff's alleged mental impairments were not severe, either singly or in combination, as they did not significantly affect his ability to meet the mental demands of a routine work setting and were not severely limiting." [R. 18, at 10 (citing [R. 10-1, at 131-32; R. 10-1, at 143-45])]. However, the ALJ's Decision [R. 10-1, at 81-91] fails to mention the opinions of either Dr. Meyer or Dr. Sillers. In fact, the ALJ's Decision [R. 10-1, at 81-91] fails to even reference either Dr. Meyer or Dr. Sillers by name.

In contrast to the present ALJ's Decision [R. 10-1, at 81-91], in *Roberts,* the Court concluded an ALJ met his burden of providing "specific, legitimate reasons . . . supported by

14

substantial record evidence" for favoring the opinion of a non-examining source over an examining source. *Roberts,* 66 F.3d at 184. In making its conclusion, the Court in *Roberts* found the ALJ's justification for adopting the non-examining source's opinion was specific and legitimate where:

> The ALJ noted with particularity that the medical expert, Dr. Moulton, disagreed with several of Dr. Kurlychek's ratings under the Mental Residual Function Capacity Assessment. He further noted that "[t]he basis for the medical expert's disagreement with Dr. Kurlychek's conclusions were the claimant's neuropsychological test scores." Based on these test results, the ALJ concluded that "the medical expert's testimony is correct and that Dr. Kurlychek's MRFC is in irreconcilable conflict with his written report and test results," and adopted the opinion of the medical expert.

*Id.* Additionally, the Court in *Roberts* found, "[T]he decision was based on test results contained in the record, which constituted substantial evidence." *Id.* Unlike the ALJ in *Roberts,* in the present case, the ALJ's aforementioned reasons for weighing the aforementioned opinions in the manner the ALJ did are not specific, legitimate, or supported by substantial evidence. *Roberts,* 66 F.3d at 184.

Furthermore, while Defendant is correct that an RFC determination is reserved to the Commissioner and "no medical source opinion alone is conclusive on this issue" [R. 18, at 12 (citing Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2)], "[t]he adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3; *see also* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues [reserved to the Commissioner], the final responsibility for deciding these issues is reserved to the Commissioner."). Additionally, Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 states the following:

> For example, it would be appropriate to consider the supportability of the opinion and its consistency with the record as a whole at the administrative law judge and Appeals Council levels in evaluating an opinion about the claimant's ability to

>function which is from a State agency medical or psychological consultant who has based the opinion on the entire record . . . .

*Id.*

Here, as has been shown, the ALJ failed to properly consider the medical opinions in this case and the fact that Drs. Meyer and Sillers did not base their opinions on the entire record. Therefore, even though the Commissioner reserves the right to make the final RFC determination, the ALJ is still required to consider the medical opinions in the record. Moreover, if the ALJ favors a non-examining source's opinion over the opinion of an examining source, the ALJ must provide "specific, legitimate reasons" for doing so "that are supported by substantial record evidence." *Lester,* 61 F.3d at 831 (citing *Roberts,* 66 F.3d at 184). Since the ALJ's Decision [R. 10-1, at 81-91] was made in error and not supported by substantial evidence, the Court will reverse the Defendant Commissioner's decision to deny Plaintiff's disability claim and remand this matter for further administrative proceedings in accordance with this order.

## II. WHETHER THE ALJ'S RELIANCE ON VOCATIONAL EXPERT TESTIMONY WAS PROPER

Plaintiff argues, "[T]he ALJ relied on Vocational Expert [("VE")] testimony to determine that Plaintiff remained able to perform his past relevant work as a vacuum salesman," and "the ALJ's Step 4 determination is not supported by substantial evidence because the VE's testimony was elicited in response to an incomplete hypothetical question." [R. 16, at 14]. The VE in question is Dr. Rodgers, a VE who testified regarding Plaintiff's past work and work that may be available to Plaintiff. [R. 10-1, at 99]. Dr. Rodgers's opined that an individual, such as Plaintiff as described in the hypothetical question, could return to performing his past occupations as a life insurance salesperson, vacuum salesperson, a cleaner, and a D.J. [R. 10-1, at 120].

As Defendant correctly asserts, "the ALJ was not required to obtain VE testimony in determining that Plaintiff retained the RFC to perform his past relevant work as a vacuum cleaner sales associate at Step 4 Four of the sequential evaluation." [R. 18, at 14]. Additionally, "VE testimony is not a requirement at step 4, but . . . VE testimony may be obtained at step 4 to provide evidence to help us determine whether or not an individual can do his or her past relevant work." Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of "Special Profile" Into Regulations, 68 Fed. Reg. 51153, 51160, 2003 WL 22001943 (Aug. 26, 2003). Also, 20 C.F.R. § 404.1560(b)(2) states:

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work.

20 C.F.R. § 404.1560(b)(2). Regarding, hypothetical questions:

> [A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

*Id.*; *see also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

In the present case, Plaintiff's argument regarding the hypothetical question stems from the fact that the hypothetical question the ALJ asked included the limitations found in the ALJ's RFC Finding [R. 10-1, at 86]. [R. 16, at 14; R. 18; at 14]. Specifically, Plaintiff argues, "[T]he RFC failed to account for Plaintiff's significant mental health limitations, which secondary questions to

the VE suggest that these limitations would preclude the ability to perform Plaintiff's past work." [R. 16, at 14 (citing [R. 10-1, at 121])]. Since the ALJ's RFC Finding [R. 10-1, at 86] failed to account for Plaintiff's mental health limitations, Plaintiff argues, "[T]he Step 4 determination is not supported by substantial evidence, and this matter requires remand to the Agency, because if a Claimant is unable to do any past relevant work, the sequential evaluation proceeds to Step Five." [R. 16, at 14].

As previously shown herein, in favoring the opinions of non-treating sources over that of an examining source who found Plaintiff had restrictive mental impairments, the ALJ did not provide "specific, legitimate reasons" that were "supported by substantial record evidence." *Lester,* 61 F.3d at 831 (citing *Roberts,* 66 F.3d at 184). Since the ALJ's hypothetical question concerned an RFC Finding [R. 10-1, at 86] that improperly gave greater weight to Drs. Meyer and Sillers's opinions over Dr. Genthner's opinion, reliance on Dr. Rodgers's answer to the hypothetical question is equally erroneous. Therefore, as previously stated, the Defendant Commissioner's decision to deny Plaintiff's disability claim will be reversed, and this matter will be remanded.

## **CONCLUSION**

Pursuant to 42 U.S.C. § 405(g), this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). This Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted). Those determinations are left to the ALJ. *Id.* Here, the ALJ's Decision [R. 10-1, at 81-91] must be reversed because in making his RFC Finding

[R. 10-1, at 86], the ALJ failed to give some indication that she considered that Drs. Meyer and Sillers did not review the entire record and to give "specific, legitimate reasons" that are "supported by substantial record evidence" for why the ALJ gave Drs. Meyer and Sillers's opinions more weight than Dr. Genthner's opinion. *Lester,* 61 F.3d at 831 (citing *Roberts,* 66 F.3d at 184); *see also Blakley,* 581 F.3d at 409; *Longworth*, 402 F.3d at 595. For those reasons, Plaintiff's Motion for Judgment on the Pleadings [R. 15] must be granted, and Defendant's Motion for Summary Judgment [R. 18] must be denied.

Thus, for the reasons discussed, based on the undisputed facts,

IT IS ORDERED AS FOLLOWS:

1. Plaintiff's Motion for Judgment on the Pleadings [R. 15] is hereby GRANTED;

2. Defendant's Motion for Summary Judgement [R. 18] is hereby DENIED;

3. Defendant Commissioner's decision denying Plaintiff's disability claim is hereby REVERSED;

4. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is hereby REMANDED to the Commissioner for further proceedings consistent with this opinion; and

5. This matter is hereby STRICKEN from the active docket of this Court, to be restored to the active docket upon motion by any party for good cause shown.

This the 23rd day of April, 2018.



Signed By:
Edward B. Atkins
United States Magistrate Judge